IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| EMMA BRADLEY and DAN ROEHRS, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. 3:15-CV-00652-NJR-RJD |
| THE HERTZ CORPORATION, | ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on the Motion to Compel Arbitration as to Plaintiff Dan Roehrs, filed by Defendant The Hertz Corporation ("Hertz") (Doc. 77). For the reasons set forth below, the Motion to Compel Arbitration is granted.

## BACKGROUND

This putative class action lawsuit initially was filed on June 10, 2015 (Doc. 1). On August 19, 2015, Hertz filed a motion to compel arbitration as to Plaintiff Dawn Cooks and to dismiss or stay proceedings related to those claims (Doc. 24). Hertz also filed a motion to dismiss the claims of the remaining plaintiffs pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) (Doc. 25). On April 29, 2016, the Court granted Hertz's motion to compel arbitration, dismissed the claims of Plaintiff Dawn Cooks, and denied, in its entirety, the motion to dismiss the claims of the remaining plaintiffs (Doc. 55).

On January 20, 2017, Plaintiffs filed their Second Amended Class Action Complaint (Doc. 70), dropping Plaintiffs Fennoy and March, who were parties to the

First Amended Complaint (Doc. 23), and adding Plaintiff Dan Roehrs. The Second Amended Complaint alleges Hertz engaged in deceptive or unfair practices with respect to two fees, the Vehicle Licensing Recovery Fee ("VLRF") and Energy Surcharge, charged in connection with car rentals in Illinois, Missouri, California, Georgia, Michigan, and California (Doc. 70, ¶¶1-2). Plaintiffs allege Hertz "deceptively represents that it imposes these fees to reimburse it for certain costs, but the fees are unrelated to those costs, greatly exceed them, and, therefore, are designed to provide it with increased profit, not cost reimbursement." (*Id.*, ¶4). Specifically, Plaintiff Bradley alleges she rented cars from Hertz in Missouri and paid a VLRF and Energy Surcharge. Bradley brings two claims against Hertz under the Missouri Merchandising Practices Act ("MMPA") (*Id.*, ¶¶20-21). Plaintiff Roehrs is a member of Hertz's Gold Plus Rewards Program ("Gold Program") who rented cars from Hertz in Illinois, California, Georgia, Colorado, and Michigan (*Id.*, ¶¶22-29). Roehrs alleges he paid one or both fees in connection with those rentals and asserts claims under the consumer protection statutes in each of those states.

On February 24, 2017, Hertz filed a motion to compel arbitration as to Roehrs (Doc. 77). Hertz began including an arbitration provision in its rental contracts in September 2013 (Doc. 77-1, p. 1). The arbitration provision is provided to customers in a document Hertz calls the "Rental Record," a cardstock document printed by a Hertz representative for each rental transaction (*Id.*). The Rental Record documents the rental location, rental rate, and products purchased (*Id.*, p. 2). Language near the beginning of the Rental Record notifies the Hertz customer that "Further information relating to Your

rental charges, and other terms to which You agree, appear below." (*Id.*). One of the "other terms" is the arbitration provision, which provides as follows:

> **ARBITRATION PROVISION: THIS AGREEMENT REQUIRES ARBITRATION OR A SMALL CLAIMS COURT CASE ON AN INDIVIDUAL BASIS, RATHER THAN JURY TRIALS OR CLASS ACTIONS. BY ENTERING INTO THIS RENTAL AGREEMENT, YOU AGREE TO THIS ARBITRATION PROVISION.**
>
> Except for claims for property damage, personal injury or death, ANY DISPUTES BETWEEN US MUST BE RESOLVED ONLY BY ARBITRATION OR IN A SMALL CLAIMS COURT ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT ALLOWED. YOU AND THE RESPECTIVE HERTZ COMPANY IDENTIFIED ON PAGE ONE OF THIS DOCUMENT (HEREINAFTER "HERTZ") EACH WAIVE THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER. You and Hertz remain free to bring any issues to the attention of government agencies.
>
> This Arbitration Provision's scope is broad and includes, without limitation, any claims relating to any aspect of the relationship or communications between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory. It is governed by the Federal Arbitration Act, 9 U.S.C. §§1 et seq. In any arbitration under this Arbitration Provision, all issues are for the arbitrator to decide, including his or her own jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision. The arbitration will take place in the county of Your billing address unless agreed otherwise.
>
> The American Arbitration Association ("AAA") will administer any arbitration pursuant to its Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer-Related Disputes (together, the "Rules"). You can obtain the Rules at www.adr.org.
>
> IF YOU DO NOT WISH TO AGREE TO THIS ARBITRATION PROVISION, YOU MUST NOTIFY US IN WRITING WITHIN 30 DAYS OF YOUR RECEIPT OF THIS AGREEMENT BY EMAILING US AT no.arbitration@hertz.com OR BY MAIL . . . . Include your name, address, the number at the top of this Rental Record, and a clear statement that You do not agree to this Arbitration Provision. If you have previously notified Hertz of Your decision to opt out of arbitration, You do not need to do so again.

(Doc. 77-10).

A customer who is not a member of Hertz's Gold Program signs the Rental Record on an electronic pad at the rental counter (Doc. 77-1, p. 2). Customers who are

members of the Gold Program, however, provide their signatures when they enroll in that program (*Id.*). Thus, when they rent a car under the Gold Program, Hertz prints the phrase "Gold—Signature on File" on the Rental Record (*Id.*, p. 3). The arbitration provision appears on the Rental Record for both Gold Program members and non-members. The Rental Record for Gold Program members also provides, however, that "[b]y accepting the Car, You acknowledge that You have read, understand, and agree to the above and the terms and conditions applicable to Hertz #1 Club Gold Rentals in the United States and Canada." (*Id.*).

In addition to the Rental Record, Hertz also provides customers with a "Rental Agreement." According to Hertz, the Rental Agreement is broader than the Rental Record and encompasses not only the terms of the Rental Record, but also additional terms and conditions that might be supplied at the time of rental (*Id.*). For example, Hertz supplies customers with a preprinted "rental jacket" at the time of rental, which customers can use to hold the Rental Record (*Id.*). This rental jacket may contain several pages of miscellaneous terms and conditions under a header labeled "Rental Agreement Terms and Conditions." (*Id.*). Some of the terms in the Rental Agreement Terms and Conditions (located in the rental jacket), however, duplicate or vary from the Gold Program Terms and Conditions. Thus, Part I of the Gold Program Terms and Conditions includes the following, in relevant part:

> 3. .... Your Enrollment, together with the terms and conditions of the Rental Terms which are applicable to rentals in the country in which the rental commences (as modified by the Enrolling Company from time to time in the manner prescribed therein), the **Rental Record or Rental Agreement which You receive at the commencement of the rental (excluding, in the case of a rental agreement, the preprinted general terms and conditions**

**section thereof, if any)**, and any other documents which You are required to sign at the commencement of the rental, will constitute the agreement between You and the Renting Company governing the rental.

(Doc. 70-1, p. 3) (emphasis added). The next paragraph of the Gold Program Terms and Conditions states: "Reservations made not less than two (2) hours in advance of proposed rental commencement are required for Hertz Gold Plus Rewards rentals." (*Id.*, p. 3). There is no arbitration provision in the Gold Program Terms and Conditions (*see* Doc. 70-1).[1]

Roehrs has been a member of Hertz's Gold Program since September 2, 2007 (Doc. 77-4, p. 4). According to Hertz's business records, Roehrs rented a car from Hertz on twelve occasions between January 17, 2013, and December 29, 2015[2] (*Id.*, pp. 1-4). Of particular relevance here, Roehrs rented two cars from Hertz in Chicago on December 29, 2015 (*Id.*, p. 2). The Second Amended Complaint does not reference these rentals; however, Roehrs has since admitted he rented two cars from Hertz on that date (Doc. 85-1). The first December 29, 2015 rental occurred at 8:10 a.m. (*Id.*; Doc. 77-10). The Rental Record for that transaction contains Roehrs's signature (*Id.*; Doc. 77-10). The second rental occurred at 8:17 a.m. (*Id.*; Doc. 77-9). The Rental Record for that transaction does not contain Roehrs's signature but instead states "Gold – Signature on File." (*Id.*; Doc. 77-9, p. 7).

Roehrs's affidavit explains that he rented the two cars on December 29, 2015, in Chicago, for use during a family get-together in Springfield, Illinois (Doc. 85-1). He

---

[1] There is, however, a section titled "Applicable Law." (Doc. 77-2, p. 7). This section provides that "the substantive law of the jurisdiction(s) in which the rental commences will apply . . . and You irrevocably and unconditionally consent and submit to the nonexclusive jurisdiction of the courts located in that jurisdiction." (*Id.*).
[2] The Second Amended Complaint alleges two additional rentals that Hertz could not verify in its records. (*See* Docs. 70, 77-4).

made an advance reservation for one of the cars before traveling to Chicago (*Id.*, p. 3). While in transit, however, a family member informed him she would also need a car for the trip (*Id.*). Thus, on arrival, before proceeding to the lot where his pre-reserved car would be waiting for him, he went to the Hertz counter and told the rental agent he would need to rent an additional car (*Id.*). Roehrs asserts that the rental agent then "pulled up my Gold profile and rented me the Elantra. . . . I know that the agent looked at my Gold membership profile because I don't carry my USAA membership card with me, but as the Hertz Rental Record confirms, Hertz gave me its standard USAA discount. The counter agent did not have any source for my USAA membership other than my Gold profile." (*Id.*, pp. 3-4). Roehrs further attests he does not know why the agent did not record his Gold membership (*Id.*, p. 4). After the transaction was complete, he proceeded to the lot where the second vehicle—the one he reserved in advance—was waiting and drove off (*Id.*).

On February 24, 2017, Hertz filed a motion to compel arbitration as to Roehrs (Doc. 77). On April 17, 2017, Plaintiffs filed a response in opposition (Doc. 85). Hertz filed a reply brief on May 1, 2017 (Doc. 87), to which Plaintiffs filed a motion to strike (Doc. 89). As an initial matter, Plaintiffs' Motion to Strike is denied. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (motions to strike are generally disfavored).

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires courts "to place written arbitration agreements on the same footing as other contracts." *Scheurer v. Fromm Family Foods LLC*,

863 F.3d 748, 752 (7th Cir. 2017); *see also Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (The FAA "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."). Pursuant to the FAA, arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Scheurer*, 863 F.3d at 752. "[A]n enforceable agreement to arbitrate must first exist between the parties before the courts can compel arbitration." *Stone v. Doerge*, 245 F.Supp.2d 878, 881 (N.D. Ill. 2002), aff'd, 328 F.3d 343 (7th Cir. 2003). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Gore*, 666 F.3d at 1032 (citation omitted).

Whether a dispute is subject to arbitration pursuant to a valid arbitration agreement is a threshold issue to be decided by the court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-83 (2002). When the existence of a binding arbitration agreement is in dispute, "the district court must accept the non-movant's evidence as true, drawing all reasonable inferences in his favor." *Sanato v. Sears, Roebuck & Co.*, No. 15-CV-7486, 2016 WL 9631332, at *2 (N.D. Ill. Feb. 11, 2016). State contract law governs the enforceability of arbitration agreements. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). Once a district court "is satisfied that the parties agreed to arbitrate," the court "must promptly compel arbitration." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (citing 9 U.S.C. § 4); *see also Gore*, 666 F.3d at 1032 ("Once it is clear . . . that the parties have a contract that provides for arbitration . . . any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law").

# DISCUSSION

Hertz first argues that the threshold question of whether Roehrs's claims belong in arbitration is a question that itself must be referred to the arbitrator. Hertz asserts that, by virtue of Roehrs signing Rental Records with an arbitration provision delegating the question of arbitrability to the arbitrator, the parties "unequivocally agreed that 'all issues are for the arbitrator to decide, including his or her own jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision.'" (*See* Doc. 77-10). Hertz refers to this Court's prior ruling that "when parties clearly and unmistakably contract [to arbitrate] a gateway issue, such as the issue of arbitrability, the Court is bound by this agreement and must defer the decision of this threshold matter to an arbitrator." (Doc. 55, p. 8). In response, Plaintiffs argue that issues relating to the making and performance of the agreement to arbitrate are for the district court to decide. Plaintiffs admit that Roehrs agreed to contracts governing the rentals "alleged in the Complaint." They then contend that the only issue left for the Court to determine is whether those contracts included an arbitration provision. Plaintiffs contend Roehrs never agreed to arbitration.

As Plaintiffs accurately state, whether parties have formed a contract for arbitration is an issue for the district court to determine. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). In *Janiga*, the plaintiff argued he did not get a copy of the contract, he never read it, and he did not know what he agreed to. *Janiga*, 615 F.3d at 742. He also raised several defenses that would invalidate the contract. The Court noted, however, that none

of those arguments changed the fact that the plaintiff signed a contract. *Id.* And, the Court noted, if the terms of the contract are unambiguous, it must be enforced as written. *Id.* at 742-43 (citing *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 380 (7th Cir. 2009) (applying Illinois law)). Having determined the plaintiff signed a contract with an arbitration clause, the Court found the only issue remaining was whether that arbitration clause was enforceable, which was an issue for the arbitrator. *Id.* at 743.

Here, the parties argue at length over whether Roehrs's Gold Program rentals included a valid arbitration clause. Plaintiffs argue that the arbitration provision is part of the preprinted portion of the Rental Record that is excluded for Gold Program members. Hertz denies that the Gold Program excludes the preprinted terms and conditions in the Rental Record and, instead, argues that only the preprinted Rental Agreement Terms and Conditions (i.e., those found in the "rental jacket") are excluded for Gold Program members. But the Court finds the analysis to be much simpler.

Roehrs admits he signed a rental contract at 8:10 a.m. on December 29, 2015. He also admits that the rental was not a Gold Program rental. The Rental Record for that last-minute counter rental contained a valid arbitration agreement. Further, just above his signature on the Rental Record for his non-Gold Program rental is the following language:

> By signing below, You acknowledge that You have read, understand, accept and agree to the above and the Rental Agreement Terms and Conditions, which appear on the folder (GN1900005) delivered to You with this Rental Record, and You accept or decline the Optional Services as shown on Card 1 and Card 2.

This language differs from the language that appears on the Rental Record for Roehrs's pre-reserved Gold Program rental. That Rental Record states:

> By accepting the Car, You acknowledge that You have read, understand, accept and agree to the above and the terms and conditions applicable to Hertz #1 Club Gold rentals in the United States and Canada, and You accept or decline the Optional Services as shown on Card 1 and Card 2.

As this Court has previously held, non-Gold Program rentals are subject to the arbitration clause contained in the Rental Record, and questions regarding the existence, scope, and validity of the arbitration clause must be decided by the arbitrator (Doc. 55). *See Janiga*, 615 F.3d at 743 (where the plaintiff admitted he signed a contract and that contract contained an arbitration clause, the only issue remaining was whether that arbitration clause was enforceable, which was an issue for the arbitrator). That Roehrs claims he does not know why the rental he made at the counter in Chicago on December 29, 2015, was not made under his Gold Program membership is of no consequence.[3]

Because Roehrs signed a valid contract with an arbitration clause at 8:10 a.m. on December 29, 2015, his claims related to that transaction must be resolved through arbitration. Hertz contends, then, that *all* of Roehrs's claims must be arbitrated, as the arbitration provision specifies that "any disputes between us must be resolved only by arbitration." The provision also states that it "includes, without limitation, any claims relating to any aspect of the relationship or communications between us." As other district courts in this Circuit have recognized, statements such as these speak "in terms

---

[3] Roehrs has not alleged sufficient facts or made any argument that there was mutual mistake such that it infected the formation of the contract. In fact, the Court notes that any mistake was likely on Roehrs's part alone, as the Gold Program Terms and Conditions clearly require a rental to be made two hours in advance to fall under the Gold Program. Because neither party has raised this fact, however, the Court makes no conclusion regarding the reason why the counter rental was not made under Roehrs's Gold Program membership.

of relationships and not timing." *Whisler v. H.J. Meyers & Co.*, 948 F. Supp. 798, 802 (N.D. Ill. 1996); *Rand Bond of No. Amer., Inc. v. Saul Stone & Co.*, 726 F.Supp. 684, 687–88 (N.D.Ill. 1989). Accordingly, Hertz argues, the scope of the arbitration clause should extend to cover Roehrs's prior transactions with Hertz.

In response, Plaintiffs argue that Roehrs's one non-Gold Program rental should have no impact on his prior rentals. That is, the arbitration clause in the December 29, 2015 contract does not render Roehrs's claims with regard to his prior rentals subject to arbitration. In support of their argument, Plaintiffs cite to *Cindy's Candle Co., Inc., v. WNS, Inc.*, 714 F. Supp. 973, 975 (N.D. Ill.), supplemented, 721 F. Supp. 167 (N.D. Ill. 1989). In that case, the arbitration provision at issue was included in a franchise agreement and stated: "The parties agree that any and all disputes between them, and any claim by either party that cannot be amicably settled . . . shall be determined solely and exclusively by arbitration . . . ." *Id.* at 975. The plaintiff argued that the clause applied to any claims under that *specific* agreement alone, while the defendant argued it applied to any disputes between the parties, even those arising from prior franchise agreements. 721 F.Supp. at 169. Looking to the four corners of the agreement, the district court found that the parties intended the arbitration clause to apply only to disputes arising from the agreement, not from prior franchise agreements. *Id.* Thus, Plaintiffs here argue, this Court must look to the four corners of the December 29, 2015 contract to determine whether the parties intended to require arbitration for all disputes arising between the parties, even those arising from previous contracts.

In reply, Defendants argue that *Cindy's Candle Co., Inc.* is inapposite because, in that case, there was no clause delegating issues regarding the existence, scope, or validity of the arbitration agreement to the arbitrator. Here, however, the parties specifically agreed that "all issues are for the arbitrator to decide, including his or her own jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision."

The Court agrees with Defendants. When Roehrs signed the first December 29, 2015 contract, he agreed to be bound to the arbitration provision, which provides that it covers "any disputes" and "any claims relating to any aspect of the relationship or communications between us." The scope of that provision, per the delegation clause, is for the arbitrator to decide.

## Conclusion

For these reasons, the Motion to Compel Arbitration filed by Defendant The Hertz Corporation (Doc. 77) is **GRANTED**. Plaintiff Dan Roehrs's claims are **DISMISSED without prejudice** pending arbitration.

IT IS SO ORDERED.

DATED: September 29, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**