IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMMA BRADLEY and DAN ROEHRS, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 3:15-CV-00652-NJR-RJD |
| THE HERTZ CORPORATION, | ) ) ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on the Motion to Dismiss the Second Amended Class Action Complaint filed by Defendant The Hertz Corporation (Doc. 78). By separate Order, the Court has granted Hertz's Motion to Compel Arbitration as to Plaintiff Dan Roehrs and dismissed his claims without prejudice pending arbitration. Thus, the only claims remaining in the Second Amended Complaint are Counts V and VI brought by Plaintiff Emma Bradley.

According to the Second Amended Complaint, Bradley is a Missouri resident and a member of Hertz's Gold Plus Rewards Program ("Gold Program") (Doc. 70, ¶¶ 10, 20). Bradley claims that she rented a vehicle from Hertz at Lambert-St. Louis International airport for personal, family, or household purposes at various times in 2010 and that Hertz charged her an Energy Surcharge and Licensing Fee in connection with those rentals (*Id.*, ¶¶ 11, 20). Bradley seeks to represent a class of persons, as well as a subclass of members of the Hertz Gold Program, who rented a motor vehicle from Hertz in the

State of Missouri for personal, family, or household purposes and paid a so-called Energy Surcharge and/or fee for Licensing Fee based on that rental (*Id.*).

Hertz began charging customers an Energy Surcharge in 2008. The Energy Surcharge is displayed on Hertz's website when a customer reserves a vehicle. Hertz initially described the Energy Surcharge in the following manner: "The costs of energy needed to support our business operations have escalated considerably. To offset the increasing costs of utilities, bus fuel, oil and grease, etc., Hertz is separately imposing an Energy Surcharge." (*Id.*, ¶ 41). Since the inception of this lawsuit, Hertz has changed the description of the Energy Surcharge to the following:

> Separate and apart from the costs of fueling rental vehicles, energy costs represent a substantial portion of Hertz's operating expenses. To offset the significant costs of utility charges, bus fuel, oil and grease, and related costs, Hertz is separately imposing an Energy Surcharge. This charge is not intended to reflect a precise measure of Hertz's actual energy costs incurred to serve a particular customer.

(*Id.*, ¶ 44).

Bradley claims the Energy Surcharge was deceptive and unfair because it did not reimburse Hertz for increasing costs of energy. Rather, she asserts, it is unrelated to increases in energy costs and instead provides profit for Hertz (*Id.*, ¶ 50). Bradley alleges, on information and belief, that the surcharge was first imposed in Missouri in October 2008 at the rate of $1.03 per rental (*Id.*, ¶¶ 51-52). The Energy Surcharge has since increased to $1.49 (*Id.*, ¶ 55). Bradley claims that energy costs were actually falling at the time Hertz imposed the Energy Surcharge—and have continued to fall—rendering Hertz's representation false, deceptive, misleading, unfair, and unethical (*Id.*, ¶ 56).

Bradley also takes issue with the Licensing Fee Hertz charges in Missouri. On its website, Hertz defines this fee as:

> **Property Tax, Title/License Reimbursement / Vehicle Licensing Cost Recovery / Vehicle Licensing Fee / Recovery Surcharge** – This fee is for Hertz' recovery of the proportionate amount of vehicle registration, licensing and related fees applicable to a rental.

(*Id.*, ¶ 47). Bradley alleges Hertz imposed a Licensing Fee of up to 6.18 percent of the base charge for the car in Missouri, which greatly exceeds the "proportionate amount" Hertz must actually pay for vehicle registration, licensing, and related fees (*Id.*, ¶ 100-101). According to Bradley, the State of Missouri charges $11 for a motor vehicle title and $54.75 a year for registration (*Id.*, ¶ 102). Because Hertz only keeps its cars for an average of 20 months, the $11 title fee amounts to an annual cost of $6.60 (*Id.*). Thus, Bradley alleges, Hertz pays the State of Missouri $61.35 per car per year for titling, licensing, and registration (*Id.*). Assuming the average car is rented 290 days a year,[1] the cost for titling, licensing, and registration comes to $0.21 per day the car is rented (*Id.*, ¶ 105). Bradley claims the amount Hertz charges customers for the Licensing Fee well exceeds $0.21 per day and is far greater than a "proportionate amount of vehicle registration, licensing and related fees applicable to [the] rental." (*Id.*, ¶ 106).

Bradley notes that, since this Court denied Hertz's previous motion to dismiss on April 29, 2016, Hertz has suddenly stopped charging the Licensing Fee "virtually anywhere" in Missouri (*Id.*, ¶ 131, 134). It was, however, still imposing the Energy Surcharge in Missouri. (*Id.*, ¶ 134). According to Bradley, Hertz planned to resume the

---

[1] Bradley cites to data presented by Hertz in its 2014 Form 10-K to the SEC indicating its average car in the United States is rented approximately 290 days per year.

Licensing Fee in Missouri in 2017, but at a rate of 5.9 percent of the daily rate for its cars rather than the previous 6.18 percent.

Bradley, individually and on behalf of the two classes mentioned above, asserts two claims under Missouri law. In Count V, she alleges a violation of the Missouri Merchandising Practices Act ("MMPA") by means of deceptive practices (*Id.*, ¶¶ 223-227). In Count VI, she alleges a violation of the MMPA by means of unfair practices in Missouri (*Id.*, ¶¶ 228-232). Hertz has now moved to dismiss Bradley's claims for failure to state a claim (Doc. 78).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "In reviewing the sufficiency of a complaint under the plausibility standard, [a court must] accept the well-pleaded facts in the complaint as true, but [it] 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir.

2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## DISCUSSION

The Missouri Merchandising Practices Act "creates an individual cause of action under the MMPA for any person 'who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020.'" *Ward v. W. Cnty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. banc 2013), as modified (May 28, 2013) (quoting MO. REV. STAT. § 407.025.1); *White v. Just Born, Inc.*, No. 2:17-cv-04025-C-NKL (W.D. Mo. July 21, 2017). Section 407.020 prohibits the use of deception, any unfair practice, or the omission of any material fact "in connection with the sale or advertisement of any merchandise in trade or commerce." MO. REV. STAT. § 407.020. "Intent and reliance are not necessary elements of the cause of action." *Edmonds v. Hough*, 344 S.W.3d 219, 223 (Mo. App. E.D. 2011).

"The MMPA is drafted broadly and there is no specific definition of deceptive practices contained in the statute." *Ward*, 403 S.W.3d at 84. However, Missouri has promulgated state regulations in conjunction with the MMPA defining certain terms. For example, an "unfair practice" is one that either: "1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or 2. Is unethical, oppressive or unscrupulous and (B) presents a risk of, or causes, substantial injury to consumers." *Id.* (quoting 15 C.S.R. § 60–8.020); *see also Ports Petroleum Co. of Ohio v. Nixon*, 37 S.W.3d 237,

240 (Mo. 2001). Under 15 C.S.R. § 60-9.020(1), "deception" is defined as "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." "Misrepresentation" is defined as "an assertion not in accord with the facts[.]" 15 C.S.R. § 60-9.070(1).

Accordingly, to state a claim for violation of the MMPA, Bradley must allege that she (1) rented a vehicle from Hertz (2) for personal, family, or household purposes, (3) suffered an ascertainable loss of money or property, and (4) the loss was a result of Hertz's deceptive or unfair practices.

In its Motion to Dismiss, Hertz argues Bradley has failed to state a claim because she failed to allege she personally read any misleading statement about the nature or purpose of the Energy Surcharge or Licensing Fee. For example, Bradley alleges Hertz "told **customers** that it imposed its 'Energy Surcharge' to offset increasing energy costs, but that representation was false" and that it "tells **customers** that the Licensing Fee is for recovery of a proportionate amount of the vehicle registration, licensing and related fees it must pay for its cars, but the amount of this fee vastly exceeds a proportionate amount of what it pays" (Doc. 70, ¶¶ 5, 6) (emphasis added). According to Hertz, Bradley never claims that she personally saw, read, heard, or otherwise became aware of the alleged misrepresentation. Hertz argues that Bradley's failure to plead that she personally saw or read any of the alleged misleading statements is fatal to her claims because the MMPA requires a plaintiff to allege "causation" in the form of an injury resulting from deceptive or unfair practices. *See* MO. REV. STAT. § 407.025(1).

In response, Bradley asserts this is, cloaked in different words, the same argument made by Hertz in its prior Motion to Dismiss, which this Court denied. In any event, Hertz ignores Bradley's claim that Hertz omitted material facts with the intent that consumers rely on such omissions (Doc. 70, ¶ 160). That is, that Hertz *omitted* to tell consumers that its energy costs were decreasing, while at the same time charging an Energy Surcharge, and that its Licensing Fee greatly exceeded its actual licensing costs. Furthermore, Bradley argues, the MMPA does not require a plaintiff to allege reliance on a misleading representation or even that the representation "colored the decision" to purchase the product. *Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 (Mo. App. W.D. 2009).

It is true that, under the MMPA, a "consumer's reliance on the misrepresentation is not required." *Id.*; s*ee also Faltermeier v. FCA US LLC*, No. 4:15-CV-00491-DGK, 2016 WL 4771100, at *7 (W.D. Mo. Sept. 13, 2016) (a plaintiff need not allege any facts suggesting he relied on the defendant's assertions in making his purchase). The Court recognizes, however, the difference between "reliance" and "causation." Liability under the MMPA requires a showing that plaintiff suffered an ascertainable loss "as a result of" the alleged deceptive practice. MO. REV. STAT. § 407.025.1. In other words, Hertz could not have *deceived* Bradley and caused her a loss if she never saw the alleged misrepresentation in the first place.

As an initial matter, the Court notes it previously found that Bradley alleged she was "exposed to all of these misrepresentations while visiting Hertz's website to reserve a rental car." (Doc. 55, p. 12). Nevertheless, in reviewing the the Second Amended Complaint, the Court finds that Bradley alleges she used Hertz's website to rent a

vehicle from Hertz at various times in 2010 and that in connection with those rentals she was required to pay an Energy Surcharge and Licensing Fee as a condition of renting the car. Further, she alleges that Hertz requires a customer (*i.e.*, Bradley, as she alleges she was a Hertz customer) to input her location, car selection, and other information in order to calculate a total fee. Along with the total fee, Hertz presents the customer (Bradley) with a breakdown of the fees, which includes the alleged deceptive and unfair Energy Surcharge and License Fee. By clicking on the "?" next to these terms, a customer (Bradley) is then presented with descriptions of these terms. Bradley alleges these descriptions are deceptive and unfair and, thus, caused her substantial injury. When liberally construing the Second Amended Complaint, the Court finds Bradley has sufficiently stated a claim for a violation of the MMPA in Counts V and VI.

Hertz's citations to two district court cases do not persuade this Court otherwise. In *Stokes v. Dish Network L.L.C.*, No. 2:14-CV-04338-NKL, 2015 WL 3968153, at *10 (W.D. Mo. June 30, 2015), the district court found the plaintiffs failed to allege causation where they did not allege the deceptive conduct caused them to suffer an ascertainable loss of money or property. That is not the case here, as Bradley has alleged that Hertz's conduct caused her to suffer an ascertainable loss in the amount of the Energy Surcharge and Licensing Fee she paid in excess of the actual proportionate cost (Doc. 70, ¶¶ 226, 231).

In *McCall v. Monro Muffler Brake Inc.*, No. 4:10-CV-269 JAR, 2013 WL 3418089, at *3 (E.D. Mo. July 8, 2013), the district court held that, because the plaintiff "did not see the alleged misrepresentation, there can be no causal connection and any loss cannot provide the basis of a claim under the MMPA." This decision was made, however, under

the more stringent summary judgment stage of the litigation rather than the more lenient pleading stage in which this Court currently finds itself. The named plaintiffs in that case testified they did not see, read, or know about the alleged misleading statements prior to their purchases. *McCall v. Monro Muffler Brake, Inc.*, No. 4:10CV269 JAR, 2013 WL 1282306, at *5 (E.D. Mo. Mar. 27, 2013). In this case, no evidence has been presented regarding Bradley's knowledge, or lack thereof, of the alleged misleading statements. Thus, Hertz's reliance on *McCall* is unpersuasive.

## Conclusion

Because Bradley has pleaded sufficient facts stating the elements of a cause of action under the MMPA, the Motion to Dismiss filed by Defendant The Hertz Corporation (Doc. 78) is **DENIED**. This case shall proceed on Counts V and VI.

Finally, the Joint Motion to Amend/Correct the Scheduling Order (Doc. 91) is **GRANTED**. Counsel shall contact Magistrate Judge Daly within the next seven days to arrange for a telephone conference to discuss appropriate new deadlines while maintaining the August 2018 presumptive trial month.

**IT IS SO ORDERED.**

DATED:   September 29, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**