IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMMA BRADLEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HERTZ CORPORATION,<br><br>Defendant. | Case No. 3:15-CV-652-NJR-RJD |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Motion for Summary Judgment filed by Defendant The Hertz Corporation ("Hertz") (Doc. 175). Hertz argues it is entitled to summary judgment on Plaintiff Emma Bradley's claims under the Missouri Merchandising Practices Act ("MMPA") for a number of reasons, foremost, because she never read or even saw Hertz's alleged misrepresentations. And to the extent Bradley did see any allegedly deceptive language or encountered any alleged unfair practice, Hertz asserts, she has not demonstrated how she suffered an ascertainable loss. For the reasons set forth below, the Court grants Hertz's motion in part and denies it in part.

BACKGROUND

*Third Amended Complaint*

Plaintiff Emma Bradley, a Missouri citizen, filed this putative class action against Hertz alleging that she and a class of consumers who rented vehicles from Hertz were "compelled by Hertz to pay improper, deceptive, unfair and unethical fees." (Doc. 148 at

¶¶ 1-2). In her Third Amended Complaint, Bradley specifically takes issue with two fees imposed by Hertz in Missouri: an Energy Surcharge and a Vehicle Licensing Cost Recovery ("VLCR") fee (*Id.* at ¶ 3). Bradley alleges that Hertz deceptively represents that it imposes these fees to reimburse it for certain costs, including increasing energy costs and vehicle registration and licensing fees (*Id.* at ¶¶5-6). Instead, Bradley claims, the fees are unrelated to those costs, greatly exceed the costs, and are designed to provide Hertz with increased profit, not cost reimbursement (*Id.* at ¶ 4). For example, Hertz instituted the Energy Surcharge in 2008—at a time when energy costs were decreasing—and a substantial portion of the fee is used for non-energy items such as tires (*Id.* at ¶ 5).

According to the Third Amended Complaint, Hertz informs customers of its fees in the "Rate Details" of an online reservation, but the charges do not explain what the fees cover until a consumer clicks on a circle with a question mark next to the fee name (*Id.* at ¶¶ 21-24). At that point, a pop-up screen appears with various definitions of terms. Prior to this lawsuit being filed, the descriptions for the Energy Surcharge and VLCR were as follows:

> **Energy Surcharge** - The costs of energy needed to support our business operations have escalated considerably. To offset the increasing costs of utilities, bus fuel, oil and grease, etc., Hertz is separately imposing an Energy Surcharge.
>
> **Property Tax, Title/License Reimbursement / Vehicle Licensing Cost Recovery / Vehicle Licensing Fee / Recovery Surcharge** – This fee is for Hertz' recovery of the proportionate amount of vehicle registration, licensing and related fees applicable to a rental.

(*Id.* at ¶¶ 26, 33).

With regard to the Energy Surcharge, Bradley claims that both the name and website description of the surcharge were deceptive because the fee was not used to reimburse Hertz for increasing costs of energy (*Id.* at ¶ 35). Instead, it provided profit for Hertz (*Id.*). Bradley also asserts that Hertz's method of calculating the fee was unfair and unethical (*Id.* at ¶ 67). Bradley claims Hertz used projections for energy expenses that never came to fruition in 2008 and, despite energy prices falling in 2009, Hertz left the Energy Surcharge at the same rate for another four years (*Id.* at ¶¶ 68-71) . Bradley further asserts that in 2013, Hertz increased its Energy Surcharge based on a mathematical miscalculation; that surcharge amount remains in effect today (*Id.* at ¶¶ 77-84).

Bradley also claims the name and website description of Hertz's VLCR misrepresented the true nature of the fee, as the majority of the costs included in the fee are not licensing costs but instead consist of county property taxes (*Id.* at ¶ 91). Even if those payments were legitimately part of the fee, however, Bradley alleges that Hertz still overcharged its customers (*Id.* at ¶ 93). And by basing the fee as a percentage of the daily rate rather than a flat fee, it is the class of the car, the location of the rental, and other factors that influence the VLCR a customer pays rather than Hertz's actual cost for licensing, registration, and titling of the car (*Id.* at ¶ 97). Like the Energy Surcharge, Bradley also asserts Hertz's method of calculating the VLCR was unfair and unethical (*Id.* at ¶¶ 102-06).

The Third Amended Complaint alleges six counts under the MMPA. *See* MO. REV. STAT. § 407.020, *et seq.* In Counts I and VI, Bradley alleges Hertz violated the MMPA by

affirmatively misrepresenting its Energy Surcharge and VLCR—through both their names and their website descriptions—as cost recovery when they instead represented profit. Counts II and V allege Hertz violated the MMPA by omitting certain facts related to the Energy Surcharge and VLCR. Finally, Counts III and VI allege Hertz engaged in unfair practices under the MMPA by improperly calculating and persistently overcharging customers with regard to its Energy Surcharge and VLCR.

Bradley seeks to represent a class consisting of:

All members of the Hertz Gold Plus Rewards Program who, during the class period beginning on May 1, 2010, rented a motor vehicle from Hertz in the State of Missouri for personal, family or household purposes and paid a so-called "Energy Surcharge" and/or Licensing Fee in connection with such rental.

(*Id.* at ¶ 141).

*Undisputed Facts*

The material facts related to Bradley's experience as a Hertz customer are largely undisputed. Bradley used Hertz's website to rent vehicles from Hertz at its St. Louis Lambert International Airport location between ten and twenty times, beginning in 2010 (Doc. 175-3 at p. 4). The first time Bradley rented a car from Hertz, she looked at the "receipt" and noticed that it had extra charges on it—the Energy Surcharge and the VLCR fee (*Id.* at pp. 4-5; Doc. 177-2 at p. 5). Bradley asked the employee at the Hertz counter why her receipt showed the extra charges, but she does not remember the employee's response (Doc. 177-2 at p. 5).

Bradley testified that she does not recall seeing either of the fees or their descriptions when she reserved the vehicles online (Doc. 175-3 at p. 6). In fact, she has never read or paid any attention to the description for either fee on the Hertz website (*Id.* at pp. 6-7). Bradley further testified that she never received a document from Hertz that she thought was deceiving or misrepresented the facts with regard to the Energy Surcharge or the VLCR (*Id.* at p. 8).

*Hertz's Motion for Summary Judgment*

On November 9, 2018, Hertz filed the motion for summary judgment that is presently before the Court (Doc. 175). Bradley filed a timely response in opposition (Doc. 176), and Hertz filed a reply (Doc. 177). Bradley then filed a motion to strike Hertz's reply brief asserting Hertz failed to provide legitimate exceptional circumstances for filing the brief, as required by Local Rule 7.1(c) (Doc. 178). *See* SDIL-LR 7.1(c) ("Reply briefs are not favored and should be filed only in exceptional circumstances. The party filing the reply brief shall state the exceptional circumstances."). Although Bradley may not appreciate the substance of Hertz's reply brief, the Court finds that it did provide exceptional circumstances for filing the reply.

LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress &Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v.*

*Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

DISCUSSION

I.  **The Missouri Merchandising Practices Act**

The MMPA is a consumer protection statute created to supplement the common law definition of fraud and "to preserve fundamental honesty, fair play and right dealings in public transactions." *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. banc 2014); *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009). To succeed on a cause of action under the MMPA, a plaintiff must prove that: (1) she purchased or leased merchandise; (2) the merchandise was for personal, family, or household purposes; (3) she suffered an ascertainable loss of money; and (4) the loss *was the result of* an unlawful act, as defined by the statute. *Haywood v. Massage Envy*

*Franchising, LLC*, 887 F.3d 329, 334 (7th Cir. 2018) (citing *Ward v. West Cty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. banc 2013)); MO. REV. STAT. §§ 407.020, 407.025) (emphasis added).

The MMPA defines "unlawful acts" as "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise . . . ." MO. REV. STAT. § 407.020. "The use of an unlawful practice is a violation of the MMPA whether committed before, during or after the sale, so long as it was made 'in connection with' the sale." *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. banc 2014) (quotation omitted). "[I]n connection with the sale" means "a relationship between the sale of merchandise and the alleged unlawful action." *Id.*

Missouri's Code of State Regulations, promulgated in conjunction with the MMPA, define misrepresentations, omissions, and unfair practices. *See Huch*, 290 S.W.3d at 724. The regulations define "misrepresentation" as "an assertion that is not in accord with the facts" and further state that "[r]eliance, knowledge that the assertion is false or misleading, intent to defraud, intent that the consumer rely upon the assertion, or any other capable mental state such as recklessness or negligence, are not elements of misrepresentation as used in section 407.020.1, RSMo." MO. CODE REGS. tit. 15, § 60-9.070.

Omission of a material fact is "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." *Id.* § 60-9.110. Importantly, a "material fact" is any fact that a "*reasonable consumer* would likely consider to be important in making a purchasing decision." *Id.* at § 60-9.010 (emphasis

added). As with misrepresentations, there is no requirement that a consumer rely on such concealment, suppression, or omission to bring a claim under the MMPA. *Id.* at § 60-9.110.

Finally, "unfair practice" is defined as a practice that either: (1) offends any public policy as it has been established by the Constitution, statutes or common law of Missouri, or by the Federal Trade Commission, or its interpretive decisions or (2) is unethical, oppressive or unscrupulous and "presents a risk of, or causes, substantial injury to consumers." *Id.* § 60–8.020. The regulation provides that "proof of said deception, fraud, or misrepresentation is not required to prove an unfair practices as used in section 407.020.1." *Ward v. W. Cty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. banc 2013), as modified (May 28, 2013); *see also Pearlstone v. Costco Wholesale Corp.*, No. 4:18CV630-RLW, 2019 WL 764708, at *5 (E.D. Mo. Feb. 21, 2019). The Missouri Supreme Court has explained that the plain meaning of "unfair practice" is "unrestricted, all-encompassing and exceedingly broad" and covers "every practice imaginable and every unfairness to whatever degree." *Conway*, 438 S.W.3d at 416.

## II. Misrepresentation Claims (Count I and IV)

Hertz argues it is entitled to summary judgment on Bradley's misrepresentation claims for two reasons. First, Bradley admitted that Hertz never misrepresented anything to her. Second, Bradley cannot show that any alleged misrepresentations in the website descriptions caused her an ascertainable loss when she never saw the descriptions she claims are deceiving. And, even though she saw the allegedly deceiving fee names on her receipt, Hertz argues that, under *Haywood*, the names must have "led her to book" the

reservation. *See Haywood*, 887 F.3d at 335. Because Bradley did not see the fee names until after getting her "receipt," her claims fail. Even if she had seen the names, Hertz argues, she does not explain how viewing the titles of the fees caused her any ascertainable loss.

As a preliminary matter, the Court disagrees with Hertz's argument that the fee names must have "led her to book" the reservation with Hertz. The MMPA does not have a reliance requirement—that is, a consumer need not prove that she relied on the unfair act in deciding to purchase or lease the merchandise. *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009); *see also Haywood*, 887 F.3d at 338 (Sykes, J., dissenting) (noting that it is irrelevant under the MMPA whether the consumer relied on the allegedly deceptive statement). Instead, the MMPA requires a causal connection only between the unfair or deceptive merchandising practice and the plaintiff's ascertainable loss. *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008). In other words, the unlawful practice must have caused Bradley a *loss*, but it need not have caused Bradley to make a purchase.

Nevertheless, the Court finds that both of Bradley's misrepresentation claims fail as a matter of law, because she cannot prove that any misrepresentation caused her a loss. Bradley testified that she never received or saw a document from Hertz that was deceiving or misrepresented the facts with respect to either the Energy Surcharge or the

reservation. *See Haywood*, 887 F.3d at 335. Because Bradley did not see the fee names until after getting her "receipt," her claims fail. Even if she had seen the names, Hertz argues, she does not explain how viewing the titles of the fees caused her any ascertainable loss.

As a preliminary matter, the Court disagrees with Hertz's argument that the fee names must have "led her to book" the reservation with Hertz. The MMPA does not have a reliance requirement—that is, a consumer need not prove that she relied on the unfair act in deciding to purchase or lease the merchandise. *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009); *see also Haywood*, 887 F.3d at 338 (Sykes, J., dissenting) (noting that it is irrelevant under the MMPA whether the consumer relied on the allegedly deceptive statement). Instead, the MMPA requires a causal connection only between the unfair or deceptive merchandising practice and the plaintiff's ascertainable loss. *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008). In other words, the unlawful practice must have caused Bradley a *loss*, but it need not have caused Bradley to make a purchase.

Nevertheless, the Court finds that both of Bradley's misrepresentation claims fail as a matter of law, because she cannot prove that any misrepresentation caused her a loss. Bradley testified that she never received or saw a document from Hertz that was deceiving or misrepresented the facts with respect to either the Energy Surcharge or the

reservation. *See Haywood*, 887 F.3d at 335. Because Bradley did not see the fee names until after getting her "receipt," her claims fail. Even if she had seen the names, Hertz argues, she does not explain how viewing the titles of the fees caused her any ascertainable loss.

As a preliminary matter, the Court disagrees with Hertz's argument that the fee names must have "led her to book" the reservation with Hertz. The MMPA does not have a reliance requirement—that is, a consumer need not prove that she relied on the unfair act in deciding to purchase or lease the merchandise. *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009); *see also Haywood*, 887 F.3d at 338 (Sykes, J., dissenting) (noting that it is irrelevant under the MMPA whether the consumer relied on the allegedly deceptive statement). Instead, the MMPA requires a causal connection only between the unfair or deceptive merchandising practice and the plaintiff's ascertainable loss. *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008). In other words, the unlawful practice must have caused Bradley a *loss*, but it need not have caused Bradley to make a purchase.

Nevertheless, the Court finds that both of Bradley's misrepresentation claims fail as a matter of law, because she cannot prove that any misrepresentation caused her a loss. Bradley testified that she never received or saw a document from Hertz that was deceiving or misrepresented the facts with respect to either the Energy Surcharge or the

VLCR (Doc. 175-3 at p. 8).[1] In fact, the only evidence in the record indicating Hertz ever harmed Bradley is her testimony that the charges on her receipt were inaccurate because the fees were higher than they should have been—not that the names or descriptions of the fees were factually inaccurate or misleading (Doc. 174-1 at p. 47). Because Bradley admitted that Hertz has never misrepresented anything to her, Counts I and IV must fail.

Even if Bradley had not made these admissions in her deposition, her claims, at least with regard to the website descriptions, fail for another reason: Bradley could not have suffered an ascertainable loss when she admits she has never—to this day—viewed the alleged misrepresentations on Hertz's website.

"Missouri courts apply the 'benefit of the bargain' rule in determining whether a plaintiff has suffered an ascertainable loss under the MMPA." *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014). This method "compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Plubell*, 289 S.W.3d at 715. In other words, to quote the post-*Haywood* case attached by Bradley to her response, the "plaintiff must allege the product he purchased was worth less *than the product he thought he purchased had defendant's representations been*

---

[1] In response to Hertz, Bradley argues that she was not asked about the fee names. The Court notes, however, that the questioning was broad enough to encompass both the website descriptions and the fee names on the receipt:

> Q: "So you never received a document or saw a document from Hertz that was deceiving or misrepresented the facts with respect to either the energy surcharge or the vehicle licensing fee?"
>
> A. "No."

(Doc. 175-3 at p. 8).

*true.*" *Pirozzi v. Massage Envy Franchising, LLC*, No. 17SL-CC00401, *3 n.1 (St. Louis Cir. Ct. Nov. 13, 2018) (emphasis added). Such language necessarily implies that the consumer had an idea in her mind of what the product should be worth based on the representation made by the defendant, but that the product was actually worth less than that amount because the representation was false or misleading. But if the consumer never was exposed to the misrepresentation in the first place, how can she prove she failed to receive the benefit of the bargain?

True, to this Court's knowledge, there is no Missouri case definitively holding that a named plaintiff must have been exposed to an alleged misrepresentation to succeed on an MMPA claim. In most cases, however, knowledge of the misrepresentation is either explicit or implied in the facts of the case. *See, e.g.*, *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313 (Mo. Ct. App. 2016). Other courts, interpreting Missouri law, have affirmatively imposed the requirement that a plaintiff must have seen or read the alleged misrepresentation in order to prove he or she suffered an ascertainable loss. *See McCall v. Monro Muffler Brake, Inc.*, No. 4:10CV269 JAR, 2013 WL 1282306, at *5 (E.D. Mo. Mar. 27, 2013) (named plaintiffs who did not see, read, or know about AutoTire's disclosures regarding its Shop Supply Fee could not have been misled by those disclosures); *see also Haywood*, 887 F.3d at 339 (J., Sykes, dissenting) ("The allegedly deceptive advertisements appeared on Massage Envy's website . . . [and] Holt viewed the website in April 2012 before booking her one-hour massage at a Missouri franchise. Nothing more is needed.")

The Court agrees with Judge Sykes in her dissent that "nothing more is needed"

than an allegation that the plaintiff viewed the defendant's website, which contained the alleged misrepresentations—at the motion to dismiss stage. *See Haywood*, 887 F.3d at 339. At the summary judgment stage, however, Bradley has the burden of proof of demonstrating the essential elements of her case. *Celotex*, 477 U.S. at 323. Here, she has failed to do so. Because Bradley never read the website descriptions, she cannot prove any causal connection between the alleged misrepresentations and any loss she suffered. Accordingly, summary judgment is granted to Hertz on Counts I and IV.

### III. Omission Claims (Counts II and V)

Hertz next argues that it is entitled to summary judgment on Bradley's claims that Hertz omitted material facts related to the fees. With regard to the Energy Surcharge, Bradley alleges that Hertz failed to inform consumers that it: was imposing the Energy Surcharge even though energy costs were declining; based the Energy Surcharge on projected 2008 costs without reviewing them after the fact and discovering the projections failed to come to fruition; included non-energy related costs of replacement tires and water utilities; kept the Energy Surcharge in place even after becoming aware of economic projections indicating 2009 fuel costs were expected to decline drastically; based its 45 percent increase in the surcharge in 2013 on a supposed comparison of 2013 costs to 2007 costs, but it included items in its 2013 calculation that were not part of the 2007 calculation; based that 45 percent increase in 2013 on a mathematical error; kept the flawed 2013 surcharge in place to this day without attempting to determine whether its energy costs had stayed the same; is not using the Energy Surcharge as an offset for the

exact amount of specific energy expenses that had increased beyond the normal level; and had no legitimate basis for separating energy costs from other costs or for requiring customers to reimburse Hertz for them separately (Doc. 148 at pp. 25-26).

With regard to the VLCR, Bradley claims Hertz failed to inform consumers that: only 12 percent of the VLCR actually recovers licensing costs; even considering all costs the VLCR does recover, it generally results in an overcharge; because the VLCR is charged as a percentage of the daily rate, it does not provide a fair allocation of Hertz's costs among its customers; the fee was different for different cars even though the licensing expense was the same; the way the fee was calculated reflected the limitations of Hertz's computer system; and the fee is not based on the percentage of licensing expense attributable to the consumer's rental (*Id.* at p. 32).

Hertz asserts that these alleged omissions are just another way to say that Hertz misrepresented the truth. Furthermore, Hertz asserts, Bradley has failed to show that the omissions were material when there is no evidence she would have found it important to know how Hertz calculates its fees when deciding whether to rent a vehicle from Hertz. Finally, Hertz contends that Bradley has not shown that any alleged omissions caused her a loss when she never saw the statements with the alleged omissions.

In response, Bradley argues it is irrelevant whether there is evidence that *she* would have found it important to know how Hertz calculates its fees when deciding whether to rent a car from the company. Rather, the Court should consider whether there is any evidence that a *reasonable consumer* would find a fact important to consider in

deciding whether to rent from Hertz. Here, that evidence exists in the form of her expert's testimony that a consumer would be more willing to choose Hertz than another rental company because of Hertz's terms and explanations.

Despite Bradley's arguments to the contrary, the Court finds that her omission claims, which only relate to the website descriptions, fail as a matter of law because she never read the website descriptions in the first place. Bradley is correct that the Court should use a "reasonable consumer" standard in determining whether an omitted fact would be important to the purchasing decision, but "while the reasonable consumer standard is relevant to whether a practice is unlawful under the MMPA, it is not relevant to whether there was an ascertainable loss to the plaintiff." *Bratton v. Hershey Co.*, No. 2:16-CV-4322-C-NKL, 2018 WL 934899, at *3 (W.D. Mo. Feb. 16, 2018).

Here, Bradley never viewed the website descriptions that contained the alleged omissions, so she cannot prove that, but for the omissions, she would not have sustained a loss. *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008) ("The Owens assert that the district court erred in applying the proximate cause standard of tort law to their MMPA claim, but there is no denying that causation is a necessary element of an MMPA claim. . . . [T]he plain language of the MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice."). Just as with her misrepresentation claims, Bradley cannot prove she suffered an ascertainable loss as a result of Hertz's omissions. Accordingly, Hertz is entitled to summary judgment on Counts II and V.

## VI. Unfair Practices Claims (Counts III and VI)

Lastly, Hertz argues that Bradley's unfair practices claims in Counts III and VI fail as a matter of law because she is essentially relabeling her misrepresentation and omission claims as unfair practices. Because she cannot show causation with regard to those claims, Hertz argues, her unfair practices claims should also fail.

Bradley, on the other hand, argues that her unfair practices claims relate to the actual miscalculation of the fees, not Hertz's representations regarding what the fees pay for. For example, Bradley alleges that Hertz: based its calculation of the Energy Surcharge on projections of costs that did not come to fruition; ignored projections that energy costs would plummet; included non-energy costs in its calculation; kept the same surcharge in place for five years without reviewing the true costs; made a mathematical miscalculation in 2013, leading to a 45 percent increase in the surcharge; and has not attempted to determine, since 2013, whether its energy costs support imposing the current Energy Surcharge (Doc. 148 at pp 43-44).

With regard to the VLCR, Bradley claims Hertz engaged in unfair practices in that: 88 percent of the costs Hertz included in the VLCR were not costs it incurred for licensing and registering its vehicles; Hertz persistently overcharges for those costs and does not reimburse customers for the overcharges; and Hertz unfairly and unethically sets the VLCR as a percentage of its daily rates rather than a flat fee, resulting in an inequitable allocation of costs among consumers (Doc. 148 at p. 46).

Although Hertz couches Bradley's unfair practices claims as mere restatements of

her misrepresentation claims, the Court is not convinced. As pleaded, the alleged unfair practices are independent acts that a jury could find to be unlawful under the MMPA. The unfair practices are not relying on the "same baseline allegation" that Hertz misled consumers by hiding information, as was the situation in *Haywood*. 887 F.3d at 333.[2] Furthermore, because Bradley's unfair practices claims are independent of her misrepresentation and omission claims, her failure to review the fee descriptions on Hertz's website is inconsequential here.

Of course, there is still a causation requirement. Bradley must be able to prove that Hertz's unfair practices caused her to suffer an ascertainable loss. In the Third Amended Complaint, Bradley claims that, as a result of Hertz's acts as described above, she and the class she seeks to represent suffered an ascertainable loss when they paid more than they should have for both the Energy Surcharge and the VLCR (*See* Doc. 148). Hertz has neither argued the merits of this allegation nor presented any evidence demonstrating that this claim ultimately would fail as a matter of law. Accordingly, the Court declines to grant summary judgment on Bradley's unfair practices claims in Counts III and VI.

## CONCLUSION

---

[2] Even if Bradley's unfair practices claim was based on Hertz's misrepresentations, there is nothing in the MMPA that prohibits a plaintiff from bringing multiple legal theories based on the same set of facts. Hertz claims that the MMPA's unfair practices prong "contemplates something different than a deceptive practice, *i.e.*, a claim based on allegations of something other than 'deception, fraud, or misrepresentation,'" but the state regulation cited is not so limited. Instead, it says an unfair practice is (a) any practice that offends public policy or is unethical, oppressive or unscrupulous and (b) presents a risk of, or causes, substantial injury to consumers. MO. CODE REGS. tit. 15, § 60-8.050. Hertz's attempt to limit the realm of what constitutes an unfair practice is unavailing, especially considering that the Missouri Supreme Court has called the unfair practice definition "exceedingly broad," covering "every practice imaginable and every unfairness to whatever degree." *Conway*, 438 S.W.3d at 416.

For these reasons, the Court **GRANTS in part and DENIES in part** the Motion for Summary Judgment filed by Defendant The Hertz Corporation (Doc. 175). Counts I, II, IV, and V are **DISMISSED with prejudice** as to named Plaintiff Emma Bradley. Bradley's Motion to Strike (Doc. 178) is **DENIED**.

If the parties have any objection to the Court ruling on Bradley's class certification motion as currently briefed, they should supplement their pleadings within **14 days** of this Order.

**IT IS SO ORDERED.**

DATED:   August 22, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**